IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| TAMMY C. MCCRAE-COLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:24-CV-103 |
| | ) | |
| THOMAS L. CARDELLA & | ) | |
| ASSOCIATES, INC., d/b/a TLC | ) | |
| ASSOCIATES and INFOCISION | ) | |
| MANAGEMENT CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Tammy McCrae-Coley filed this lawsuit against Thomas L. Cardella and Associates Inc. and InfoCision Management Corporation, alleging the defendants called her multiple times in violation of the North Carolina Telephone Solicitation Act and the federal Telephone Consumer Protection Act. The defendants move to dismiss all claims. Ms. McCrae-Coley has not made any argument supporting two of her claims, and they will be dismissed as abandoned. The motion to dismiss will otherwise be denied.

I.  **Background**

Ms. McCrae-Coley filed suit in state court against TLC and InfoCision, alleging that they violated North Carolina law when making telemarketing calls on behalf of Spectrum Communications. *See* Doc. 1-1 at 1.[1] After motions about jurisdiction were resolved, *see* Doc. 26, Ms. McCrae-Coley filed a second amended complaint, adding two

---

[1] The Court has used the pagination appended by the CM/ECF system, not the internal pagination of the documents.

claims under the federal TCPA, Doc. 29 at pp. 16–17 ¶¶ 68–81, to the three state law claims asserted in her earlier complaint. *Id.* at pp. 14–16 ¶¶ 46–67.[2] Her claims focus on telephone calls the defendants allegedly made on behalf of Spectrum in 2019 and 2020. *Id.* at p. 5 ¶ 16, p. 22.

The defendants now move to dismiss all five claims. Doc. 30. They contend that Ms. McCrae-Coley is collaterally estopped from asserting three of these claims by a previous arbitration proceeding and that she has failed to state a claim on which relief may be granted as to the remaining two claims. Doc. 31 at 11–23.

## II. The Do-Not-Call Registry Claims (Counts One and Five)

Generally, both federal and state law prohibit making solicitation telephone calls to numbers on the national do-not-call registry. *Krakauer v. Dish Network LLC*, 311 F.R.D. 384, 387 (M.D.N.C. 2015) (citing 47 U.S.C. § 277(c); 47 C.F.R. § 64.1200(c)(2)); N.C. GEN. STAT. § 75-102(a). Both laws have a number of exceptions, including for calls made when there is an "established business relationship" between the telephone subscriber and the solicitor. *Krakauer*, 311 F.R.D. at 387–88 (citing 47 U.S.C. § 277(a)(4); 47 C.F.R. §§ 64.1200(c)(2), (f)(5)); N.C. GEN. STAT. § 75-103(a)(2).

Under federal law, this relationship exists for 18 months after the telephone subscriber makes a purchase from or has a transaction with the solicitor. 47 U.S.C. § 277(a)(2); 47 C.F.R. § 64.1200(f)(5). Under North Carolina law, the relationship exists

---

[2] Ms. McCrae-Coley also asserts a cause of action for "treble damages," Doc. 29 at pp. 17–18 ¶¶ 82–85, but N.C. GEN. STAT. § 75-16 does not provide a cause of action; it authorizes damages after the plaintiff establishes a violation of Chapter 75.

2

for 18 months after the telephone subscriber makes a purchase from the solicitor or for three months after the subscriber inquires or applies for a product offered by the seller. N.C. GEN. STAT. § 75-101(5).

Spectrum and Ms. McCrae-Coley were involved in a previous arbitration of do-not-call claims under the TCPA and the similar North Carolina law involving different telephone calls.  In the arbitration decision, the arbitrator stated that Ms. McCrae-Coley "placed an order for . . . services on July 22, 2019," and then "cancel[ed] the order before it was fulfilled and services connected."  Doc. 21-1 at 2 n.1.  Spectrum contends that this is a factual finding that Ms. McCrae-Coley is precluded from contesting here and that this factual determination means that Spectrum and Ms. McCrae-Coley had an established business relationship under federal and state law so that the prohibition on calling numbers on the do-not-call registry during the time at issue does not apply.  Doc. 31 at 11–19.

**A. Collateral Estoppel**

Under the doctrine of collateral estoppel, "the determination of an issue in a prior proceeding precludes the relitigation of that issue in a later action, provided that the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding."  *Whitlock v. Triangle Grading Contractors Dev., Inc.*, 205 N.C. App. 444, 448, 696 S.E.2d 543, 546 (2010).  Such "[p]reclusive effect is not limited to court proceedings; it arises in the same manner from arbitration awards." *Champion Pro Consulting Grp., Inc. v. Impact Sports Football, LLC*, 976 F. Supp. 2d 706, 714 (M.D.N.C. 2013) (quoting *id.* at 448).

Under North Carolina law relied upon by Spectrum, the party seeking to collaterally estop the relitigation of issues must establish the following elements:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

*Id.* (quoting *State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000)).

### B. The Arbitration Proceeding

In November 2021, Ms. McCrae-Coley initiated arbitration proceedings against Charter Communications, Inc. and Spectrum, alleging violations of the TCPA and the similar North Carolina law. Doc. 21-1 at 2; Doc. 34-1 at 15. During arbitration, Ms. McCrae-Coley sought damages for 128 unwanted telephone calls she allegedly received from Spectrum or on its behalf between November 22, 2020, and August 12, 2022. Doc. 21-1 at 2; Doc. 34-1 at 15, 18.[3] After an evidentiary hearing, the arbitrator denied Ms. McCrae-Coley's claims under the TCPA and North Carolina law for two reasons. Doc. 21-1 at 2–3. First, the arbitrator held that Ms. McCrae-Coley had not introduced credible and authenticated evidence showing that the unwanted calls between November 22, 2020, and August 12, 2022, were placed by a caller on behalf of Spectrum. *Id.* at 2. Second, the arbitrator held that relief could not be granted on the 23 calls Charter admitted

---

[3] During the arbitration, Ms. McCrae-Coley submitted a call log of 166 unwanted telephone calls she allegedly received from Spectrum or on its behalf between July 24, 2019, and August 12, 2022, Doc. 21-1 at 2, but she did not seek relief for any calls made before November 22, 2020. Doc. 34-1 at 15.

4

making on Spectrum's behalf because Ms. McCrae-Coley did not seek recovery for any calls placed before March 25, 2020, the timeframe during which all 23 such calls were made. *Id.* at 2–3.

In a footnote in the arbitration award, the arbitrator stated:

> [Ms. McCrae-Coley] placed an order for . . . services on July 22, 2019, and again on March 24, 2020, each time cancelling the order before it was fulfilled and services connected. [Charter] argued that any calls made [on Spectrum's behalf] in response to [Ms. McCrae-Coley's] own inquiries for services cannot violate the Acts. [Ms. McCrae-Coley] asserts she withdrew her request for services on March 25, 2020 and advised Charter not to call her anymore, and now seeks recovery for all calls from March 25, 2020 forward.

*Id.* at 2–3 n.1. The arbitrator did not decide whether any calls made in response to Ms. McCrae-Coley's inquires for services were lawful. *See generally id.* at 2–3.

### C. Discussion

For collateral estoppel to apply under North Carolina law, "the determination of the issue in the prior action must have been necessary and essential to the resulting judgment." *Summers*, 351 N.C. at 623 (cleaned up). But the arbitrator's decision did not rely on the determination that Ms. McCrae-Coley placed an order on July 22, 2019. The arbitrator held that Ms. McCrae-Coley could not recover for calls that Charter admitted placing on Spectrum's behalf for only one reason: because Ms. McCrae-Coley "is not seeking recovery for calls placed prior to March 25, 2020." Doc. 21-1 at 2. In the footnote cited by Spectrum, the arbitrator noted that Spectrum "argued that any calls made in response to [Ms. McCrae-Coley's] own inquiries for services cannot violate the Acts," but the arbitrator did not rule on that contention; this may show that the issue was

5

Case 1:24-cv-00103-CCE-JLW   Document 36   Filed 08/09/24   Page 5 of 9

litigated, but the order itself shows that the statements in the footnote were not necessary to the judgment. *Id.* at 2–3 n.1. The arbitrator's decision did not depend on Ms. McCrae-Coley's order of Spectrum services.

The defendants have not established the necessary elements to collaterally estop the relitigation of whether Ms. McCrae-Coley placed an order for Spectrum services.[4] The defendants' motion to dismiss counts one, Doc. 29 at p. 14 ¶¶ 46–52, and five, *id.* at p. 17 ¶¶ 75–81, will be denied.

### III. Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a plaintiff does not have to provide "detailed factual allegations" in the complaint, *see id.*, the allegations must still allow "the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *id.*).

#### A. NCTSA Misleading Information Claim (Count Two)

To state a claim under § 75-102(i) of the NCTSA, the plaintiff must allege that the plaintiff is a user of a telephone caller identification technology and the defendant caused misleading information to be transmitted to the plaintiff's caller identification technology.

---

[4] The Court need not resolve whether "placing an order" is making a purchase so that under state and federal law the 18-month exception applies, or, under state law, whether it is more like making an application for a product so that the three-month exception applies. *See* 47 U.S.C. § 277(a)(2); 47 C.F.R. § 64.1200(f)(5); N.C. Gen. Stat. § 75-101(5).

N.C. Gen. Stat. § 75-102(i). Ms. McCrae-Coley has alleged sufficient facts to make this "spoofing" claim plausible. She alleged that when she calls the numbers shown, she is not connected "to anything identifying who actually called" and that when she looks the numbers up online there is no information about the entities associated with them. Doc. 29 at p. 7 ¶ 25. Whether or not these allegations will be sufficient to get to a jury need not be decided now, as she does not have to prove her claim in the complaint; but they are sufficient to make it plausible that the defendants transmitted misleading information – fake phone numbers – to her caller ID. *Id.* at p. 15 ¶ 56.

The defendants contend that Ms. McCrae-Coley has not alleged sufficient facts to support an inference of a § 75-102(i) violation because her allegation is written in the present tense about phone numbers later provided by a defendant, not about phone numbers she saw when she received the calls. Doc. 31 at 20–21. The defendants maintain that the facts alleged do not allow the inference that the defendants used a misleading number at the time the violative calls were made more than four years ago. *Id.* But *pro se* complaints, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up), and on a motion to dismiss, courts draw all reasonable inferences in the plaintiff's favor. *See Twombly*, 550 U.S. at 555–56; *Langford v. Joyner*, 62 F.4th 122, 124 (4th Cir. 2023). And the defendants appear to rely on facts outside the current record. Doc. 31 at 21 (asserting the phone numbers are toll-free numbers). A more developed factual record will allow the Court to better assess this claim.

7

Case 1:24-cv-00103-CCE-JLW Document 36 Filed 08/09/24 Page 7 of 9

Ms. McCrae-Coley has alleged sufficient facts to support an inference that the defendants violated § 75-102(i) of the NCTSA. The defendants' motion to dismiss count two, Doc. 29 at pp. 14–15 ¶¶ 53–61, will be denied.

### B. NCTSA Do-Not-Call Request and TCPA Call-Without-Consent Claims (Counts Three and Four)

In her third cause of action, Ms. McCrae-Coley contends that Spectrum violated state law prohibiting telephone solicitation calls after a subscriber communicates a do-not-call request. *Id.* at pp. 15–16 ¶¶ 62–67 (count three asserting state law claim under § 75-102(b)). In her fourth cause of action, she contends that Spectrum violated the TCPA's prohibition on solicitation calls made without prior express written consent. *Id.* at pp. 16–17 ¶¶ 68–74 (count four asserting federal claim under 47 U.S.C. § 277(b)(3)). The defendants made specific arguments contending that these claims should be dismissed. Doc. 31 at 15–16 (arguing collateral estoppel as to count three based on arbitral finding that do-not-call request was made March 25, 2020), 22–23 (addressing factual gaps in allegations directed to count four).

In her brief in opposition to dismissal, Ms. McCrae-Coley did not address these arguments or attempt to support these claims. *See generally* Doc. 33. Thus, she has conceded these issues and abandoned these claims. *See, e.g.*, *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 8-CV-918, 2010 WL 1667285, at *8 (M.D.N.C. Apr. 23, 2010) (collecting cases "recogniz[ing] the general principle that a party who fails to address an issue has conceded the issue" and abandoned those claims); *Sasser v. Safe Home Sec., Inc.*, No. 18-CV-746, 2019 WL 3858607, at *5 (M.D.N.C. Aug. 16, 2019) (collecting

8

cases "in both this District, and throughout the Fourth Circuit, agree[ing] that failing to respond to an argument constitutes an abandonment of a claim"). "A party should not expect a court to do the work that it elected not to do." *Hughes v. B/E Aerospace, Inc.*, No. 12-CV-717, 2014 WL 906220, at *1 n.1 (M.D.N.C. Mar. 7, 2014).

It is **ORDERED** that the defendants' motion to dismiss the second amended complaint, Doc. 30, is **GRANTED in part and DENIED in part** as follows:

1. The plaintiff's NCTSA do-not-call request claim (count three), Doc. 29 at pp. 15–16 ¶¶ 62–67; and TCPA call-without-consent claim (count four), Doc. 29 at pp. 16–17 ¶¶ 68–74, are **DISMISSED**; and

2. The defendants' motion to dismiss the second amended complaint is otherwise **DENIED** as to the plaintiff's NCTSA do-not-call registry claim (count one), Doc. 29 at p. 14 ¶¶ 46–52; TCPA do-not-call registry claim (count five), Doc. 29 at p. 17 ¶¶ 75–81; and NCTSA misleading information claim (count two), Doc. 29 at pp. 14–15 ¶¶ 53–61, which may **PROCEED**.

3. The defendants **SHALL** file answer within the time authorized in the Federal Rules of Civil Procedure. The case is old and an extension of time is unlikely.

4. The parties **SHALL** exchange initial pretrial disclosures required by Federal Rule of Civil Procedure 26(a)(1)(A) no later than August 30, 2024.

5. The matter is referred to the Magistrate Judge for an initial pretrial conference.

This the 9th day of August, 2024.

_____
UNITED STATES DISTRICT JUDGE

9

Case 1:24-cv-00103-CCE-JLW   Document 36   Filed 08/09/24   Page 9 of 9